# EXHIBIT A

VIRGINIA:

IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

| | | |
|---|---|---|
| JOHN M. PITMAN, III and PENINSULA PLASTIC SURGERY CENTER, LTD. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: CL16001780-00 |
| XCENTRIC VENTURES, LLC, EDWARD MAGEDSON, DARREN M. MEADE, TRACEY A. RICHTER, ANNA RICHTER, BERT PITMAN (a/k/a BERT RICHTER) | ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendant, Edward Magedson,[1] pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby

provides notice that he has filed a Notice of Removal in this action with the United States

District Court for the Eastern District of Virginia, Newport News Division. A true copy of the

Notice of Removal filed with the federal court is attached hereto as **Exhibit A**.

Dated: 2/10/17

Respectfully submitted,

David A. Warrington (VSB No. 72293)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com

*Counsel for Edward Magedson and*
*Xcentric Ventures, LLC*

---

[1] Undersigned counsel also represents Xcentric Ventures, LLC in this matter. However, the Notice of Removal is filed on Magedson's behalf.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2017, the foregoing was sent via

electronic and first class mail, postage prepaid, to the following:

Aaron B. Houchens (VSB No. 80489)
Stanley & Houchens, LLC
13508 Booker T. Washington Hwy.
Moneta, VA 24121
ahouchens@shg-law.com

Stephen M. Smith (VSB No. 14362)
Seth D. Scott (VSB No. 80907)
David B. Holt (VSB No. 65564)
The Smith Law Center
2100 Kecoughtan Road
Hampton, VA 23661
sscott@attorneys4injured.com
*Counsel for Plaintiff*

Jesse Binnall
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
jbinnall@harveybinnall.com
*Counsel for Anna Richter, Tracey Richter and Bert Pitman*

Thomas K. Norment, Jr.
Kauffman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188
tknorment@kaufcan.com
*Counsel for Anna Richter and Bert Pitman*

David A. Warrington (VSB No. 72293)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com

*Counsel for Edward Magedson and*

2

*Xcentric Ventures, LLC*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| JOHN M. PITMAN, III and PENINSULA PLASTIC SURGERY CENTER, LTD. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: _____ |
| XCENTRIC VENTURES, LLC, EDWARD MAGEDSON, DARREN M. MEADE, TRACEY A. RICHTER, ANNA RICHTER, BERT PITMAN (a/k/a BERT RICHTER) | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Edward Magedson ("Magedson"),[1] by counsel, pursuant to 28 U.S.C. §§ 1332, 1441 and

1446, files his Notice of Removal of this action to the United States District Court for the Eastern

District of Virginia, Newport News Division.  As grounds for removal, Magedson[2] states as

follows:

## I.   BACKGROUND

1.   John M. Pitman, III ("Pitman") and Peninsula Plastic Surgery Center, Ltd.

("PPSC") filed a multiple count Complaint against the defendants styled as *John M. Pitman, III,*

*et al.  v. Xcentric Ventures, LLC, et al.*, in the Circuit Court for Williamsburg/James City

County, Virginia, Case No. 16001780-00 (the "State Court Action"), on or about October 5,

2016.

2.   Magedson was served with the Summons and Complaint on January 12, 2017.

---

[1] Undersigned counsel also represents Xcentric Ventures, LLC ("Xcentric").  On December 7, 2016, Xcentric filed a Notice of Removal with this court (Case No.: 4:16-cv-00179-HCM-DEM).

[2] By removing this matter to federal court, neither Magedson nor Xcentric waive any arguments regarding personal jurisdiction.

EXHIBIT
A
ALL-STATE LEGAL®

3.     The removal of the State Court Action is timely because, pursuant to federal removal procedure, this Notice of Removal has been filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . ." 28 U.S.C. § 1446(b)(1).

4.     This Court is the proper venue for removal under 28 U.S.C. § 1441(a) because it is the federal district court that embraces the jurisdiction where the State Court Action was filed and is pending.

5.     In compliance with 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon Magedson is attached hereto as **Exhibit A**.

## II.     AMOUNT IN CONTROVERSY

6.     In the Complaint, Pitman and PPSC seek damages from the defendants in excess of $60,350,000. *See* Ex. A., Compl. at Prayer for Relief.

7.     Accordingly, the $75,000.00 amount-in-controversy requirement is satisfied. *See* 28 U.S.C. § 1332(a).

## III.     DIVERSITY OF CITIZENSHIP AMONG THE PARTIES

### A.     General principles in determining citizenship

8.     "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

9.     "[T]o support diversity jurisdiction in removed cases, diversity must have exited both at the time the action as originally commenced in state court and at the time of filing the petition for removal." *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989).

2

10.     "For purposes of determining citizenship, a natural person is deemed a citizen of the State in which he or she is domiciled." *Black Water Mgmt., LLC v. Sprenkle,* No. 3:15-cv-365, 2015 WL 5089367, at *2 (E.D. Va. Aug. 27, 2015).

11.     "Domicile is evidenced by actual residence and intent to make that residence one's permanent home." *Eastport Ventures, Ltd. v. Kariman*, No. 1:06-cv-1177, 2007 WL 783028, at *4 (E.D. Va. Mar. 13, 2007), *see also Gambelli v. U.S.*, 904 F. Supp. 494, 496 (E.D. Va. 1995). Courts can look at a variety of factors to determine domicile, including: "the person's declarations, place of business, payment of taxes, house of residence, driver's license and automobile registration and title, ownership of real and personal property, telephone number and listing, payment for utilities, banking, receipt of mail, and exercise of political rights or satisfaction of the domicile's requirements to register and vote." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, No. 3:09-cv-220, 2010 WL 1434298, at *2 (W.D.N.C. Apr. 6, 2010) (citation omitted), *see also Gambelli*, 904 F. Supp. at 497 (examining similar factors to determine domicile of armed forces member).

12.     A corporation's citizenship includes the state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).

13.     "[T]he citizenship of a limited liability company is determined by the citizenship of all of its members." *Black Water Mgmt., LLC,* 2015 WL 5089367, at *2.

### B.  Citizenship of the plaintiffs

14.     Upon information and belief, at all times relevant hereto, including at the time of filing the Complaint and as of the date of this Notice of Removal, Pitman was and is a citizen of the Commonwealth of Virginia.

15.     As plead in the Complaint, "at all times material to this Complaint" PPSC is a "Virginia corporation, located in Williamsburg, Virginia." Ex. A, Compl. at ¶ 7.  Moreover, the records of the Virginia State Corporation Commission indicate that as of the date of this filing, PPSC is incorporated in Virginia and maintains its principal office in Williamsburg, VA.  *See* **Exhibit B** at ¶¶ 4-5.  As such, at all times relevant hereto, including at the time of the filing of the Complaint and as of the date of this Notice of Removal, PPSC was and is a citizen of the Commonwealth of Virginia.

### C.  Citizenship of the defendants

16.     As plead in the Complaint, Tracey Richter is a citizen of Iowa, residing in Mitchellville, Iowa, at the time of filing. Ex. A, Compl. at ¶ 8. Moreover, Tracey Richter is currently domiciled in Iowa.  Therefore, at all times relevant hereto, including at the time of filing the Complaint and as of the date of this Notice of Removal, Tracey Richter was and is a citizen of Iowa.

17.     As plead in the Complaint, Anna Richter is a citizen of Iowa, residing in Des Moines, Iowa, at the time of filing.  Ex. A, Compl at ¶ 9.  Moreover, as stated in **Exhibit C** at ¶ 5, Anna Richter is currently domiciled in Iowa.  Therefore, at all times relevant hereto, including at the time of filing the Complaint and as of the date of this Notice of Removal, Anna Richter was and is a citizen of Iowa.

18.     As plead in the complaint, Bert Pitman is a citizen of the Commonwealth of Virginia, at the time of filing. Ex. A, Compl. at ¶ 10.  However, as stated in **Exhibit D** at ¶ 15, Bert Pitman was a domicile of Iowa at the time the Complaint was filed and is currently domiciled in Iowa.  Therefore, at all times relevant hereto, including at the time of filing the

Complaint and as of the date of this Notice of Removal, Bert Pitman was and is a citizen of Iowa.

19.     As plead in the Complaint, Magedson is a citizen of Arizona, residing in Fountain Hills, Arizona, at the time of filing. Ex. A, Compl. at ¶ 13.  Moreover, as stated in **Exhibit E** at ¶ 5, Magedson is currently domiciled in Arizona.  Therefore, at all times relevant hereto, including at the time of filing the Complaint and as of the date of this Notice of Removal, Magedson was and is a citizen of Arizona.

20.     As plead in the Complaint, Xcentric is a limited liability company. Ex. A, Compl. at ¶ 11.  Xcentric sole member is Creative Business Investment Concepts, Inc. ("CBIC"). **Exhibit F** at ¶ 5. CBIC is a Nevada corporation.  *Id.* at ¶ 6.  CBIC's principal place of business is Arizona.  *Id.* at ¶ 7.  Therefore, at all times relevant hereto, including at the time of filing the Complaint and as of the date of this Notice of Removal, Xcentric was and is a citizen of Arizona and Nevada.

## CONSENT OF CO-DEFENDANTS

21.     To remove the State Court Action, pursuant to 28 U.S.C. § 1446, Magedson is required to obtain the consent of "all defendants who have been properly joined and served." 28 U.S.C. § 1441(b)(2)(A).

22.     To date, Tracey Richter, Anna Richter, Bert Pitman, Xcentric and Magedson have been served.

23.     As evidenced in the exhibits attached to this Notice of Removal, Anna Richter, Bert Pitman and Xcentric consent to removal of this action.  *See* Ex. C at ¶ 6, Ex. D at ¶ 16, Ex. F at ¶ 8.  Tracey Richter is represented by Jesse Binnall in this matter.  Mr. Binnall represents that Tracey Richter consents to the removal of this action to federal court.

24.     As of the date of this Notice of Removal, Darren Meade has not been served.  As

such, his consent to removal is not needed at this time.  *See Unicom Sys. V. Nat'l Louis Univ.*,

262 F. Supp. 2d 638, 640 n.3 (E.D. Va. 2003) ("A defendant need not joint a removal notice if . .

. it had not been served with process at the time the removal petition was filed.")

## NOTICE OF PLAINTIFF AND STATE COURT

25.     In compliance with 28 U.S.C. § 1446(d), Magedson submits that, promptly after

filing this Notice of Removal, it will provide a copy and written notice of such filing to Pitman

and PPSC and will promptly file the same with the Circuit Court for Williamsburg/James City

County, Virginia.  The written notice of removal to the Circuit Court for Williamsburg/James

City County, Virginia, will substantially conform to the document attached hereto as **Exhibit G**.

WHEREFORE, Edward Magedson, hereby removes the State Court Action to the United

States District Court for the Eastern District of Virginia, Newport News Division; and

respectfully requests that this Court assume jurisdiction of this civil action, and enter such other

and further orders as may be necessary to accomplish the requested removal and promote the

ends of justice.

Dated: February 10, 2017                    Respectfully submitted,

                                            /s/ David A. Warrington
                                            David A. Warrington (VSB No. 72293)
                                            LeClairRyan, A Professional Corporation
                                            2318 Mill Road, Suite 1100
                                            Alexandria, VA 22314
                                            Phone: (703) 647-5926
                                            Fax: (703) 647-5966
                                            david.warrington@leclairryan.com

                                            *Counsel for Edward Magedson and*
                                            *Xcentric Ventures, LLC*

6

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all authorized users, and was sent via electronic and first class mail, postage prepaid, to the following:

Aaron B. Houchens (VSB No. 80489)
Stanley & Houchens, LLC
13508 Booker T. Washington Hwy.
Moneta, VA 24121
ahouchens@shg-law.com

Stephen M. Smith (VSB No. 14362)
Seth D. Scott (VSB No. 80907)
David B. Holt (VSB No. 65564)
The Smith Law Center
2100 Kecoughtan Road
Hampton, VA 23661
sscott@attorneys4injured.com
*Counsel for Plaintiff*

Jesse Binnall
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
jbinnall@harveybinnall.com
*Counsel for Anna Richter, Tracey Richter and Bert Pitman*

Thomas K. Norment, Jr.
Kauffman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188
tknorment@kaufcan.com
*Counsel for Anna Richter and Bert Pitman*

/s/ David A. Warrington
David A. Warrington (VSB No. 72293)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5926

Fax: (703) 647-5966
david.warrington@leclairryan.com

*Counsel for Edward Magedson and
Xcentric Ventures, LLC*

# EXHIBIT A

Uploaded: 2016OCT05 11:55 Filed By:Bar# 80489 AHOUCHENS Reference: EF-20563
E-Filed: 2016OCT05 WILLIAMSBURG/JAMES CITY COUNTY CC PSYCH at 2016OCT05 15:14 CL16001780-00

VIRGINIA:

IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

JOHN M. PITMAN, III                   )

and                                    )

PENNISULA PLASTIC SURGERY CENTER, LTD   )      Case No.:

*Plaintiffs,*                )      *CL16001780-00*

v.                        )

XCENTRIC VENTURES, LLC          )

and                                    )

EDWARD MAGEDSON             )

and                                    )

DARREN M. MEADE              )

and                                    )

TRACEY A. RICHTER            )

and                                    )

ANNA RICHTER                 )

and                                    )

BERT PITMAN (a/k/a BERT RICHTER)    )

*Defendants.*             )

## COMPLAINT

Plaintiffs, John M. Pitman ("Pitman") and Peninsula Plastic Surgery Center, LTD.

("PPS') (collectively the "Plaintiffs") by and through their attorney, as and for their

Complaint against Defendants, Xcentric Ventures, LLC, Edward Magedson, Darren M.

Meade, Tracey A. Richter, Anna Richter, and Bert Pitman a.k.a. Bert Richter

1

(collectively the "Defendants") based upon their personal knowledge, information and belief, states as follows:

## NATURE OF THE ACTION

1.  This is a complex civil action alleging causes of action for tortious interference, common law conspiracy, and civil conspiracy under Virginia Code §18.2-499 -500 as well as claims for declaratory and injunctive relief.

2.  The primary cause of action is based upon a combined and concurring widespread conspiracy organized and executed jointly and severally on behalf of the Defendants across state lines.

3.  The acts alleged herein, relate to defamation, extortion, conspiracy to commit extortion, retaliation against a witness, and witness tampering.

4.  The primary and ongoing objective of the Defendants, combined and concurrent, has been and continues to be to jointly and severally inflict severe and sustained economic hardship upon the Plaintiffs and to destroy their professions and reputations.

5.  This lawsuit seeks: (1) direct and consequential damages; (2) compensatory damages, (3) punitive damages, (4) attorneys' fees, costs, expert witness fees, (5) both pre-and-post-judgment interest, and (6) injunctive relief.

## THE PARTIES

6.  Plaintiff John Pitman is now, and at all times material to this Complaint, a citizen of the Commonwealth of Virginia residing in Williamsburg, Virginia. Plaintiff is a medical doctor who is board certified in plastic surgery. Pitman has extensive medical training and has performed thousands of successful surgeries throughout his distinguished medical career. Pitman opened his private practice in 1996 in Newport News, Virginia,

which operated successfully for many years. Pitman enjoyed an excellent professional and personal reputation. In additional to his medical practice, Pitman serves his country as a reservist member of the U.S. Army Medical Corps. His military service included four (4) active duty tours at Walter Reed Amery Medical Center in support of Operation Enduring Freedom and Operation of Iraqi Freedom. He also served active duty in Afghanistan in support of Operation Resolute Support. Pitman's distinguished military career includes various awards and commendations, including the Purple Heart, Combat Action Badge, Army Commendation Medal (his fourth), and Afghanistan Campaign Ribbon.

7.     Plaintiff Peninsula Plastic Surgery Center is now, and at all times material to this Complaint, a Virginia Corporation located in Williamsburg, Virginia.

8.     Tracey Richter ("Richter"), an individual, is now, and at all times material to this Complaint, a citizen of the State of Iowa residing in Mitchellville, Iowa. Richter is a convicted murderer and is currently serving a life sentence in the Iowa Correctional Institution for Women.

9.     Anna Richter ("A. Richter"), an individual, is now, and at all times material to this Complaint, a citizen of the State of Iowa residing in Des Moines, Iowa. A. Richter is the mother of Richter and one of her closest confidants.

10.     Bert Pitman ("B. Pitman"), an individual, is now, and at all times material to this Complaint, a citizen of the Commonwealth of Virginia residing in Henrico, Virginia. B. Pitman is the son of Richter and one of her closest confidants. B. Pitman may also be known as Bert Richter.

3

11.   Xcentric Ventures, LLC ("Xcentric") is now, and at all times material to this Complaint, an Arizona Limited Liability Company located in Phoenix, Arizona. Xcentric is an internet content provider and runs a website with a URL of http://www.ripoffreport.com ("Ripoff Report").

12.   Darren M. Meade ("Meade"), an individual, is now, and at all times material to this Complaint, a citizen of the State of California residing in Laguna Beach, California.  Meade was at all relevant times an employee and/or agent of Xcentric and was paid to generate content for the Ripoff Report.

13.   Edward Magedson ("Magedson"), an individual, is now, and at all times material to this Complaint, a citizen of the State of Arizona residing in Fountain Hills, Arizona.  Magedson founded Xcentric and started the Ripoff Report in 1997.   At all times material to this Complaint, Magedson was an owner, manager, employee, and/or agent of Xcentric.

## JURISDICTION AND VENUE

14.   Personal jurisdiction over Defendants is proper because the Defendants, both individually and collectively, caused tortious injury in the Commonwealth of Virginia and those acts were the direct and proximate cause of the injuries described herein. Va. Code § 8.01-328.1(A)(3).

15.   Venue is proper in this Court pursuant to Virginia Code § 8.01-261(1)(a)(1).

4

## FACTS

*Xcentric and Magedson Form the RipoffReport.com to Allow Users to Post Content*

16. Magedson is the manager of Xcentric and the creator of the Ripoff Report website. The website was launched in 1997 under the claim that it assists customers to be able to take action for themselves. Ripoff Report's home page has a tag line that states: "By consumers, for consumers" and "Don't let them get away with it. Let the truth be known."

17. The Ripoff Report allows users to complain anonymously about any firm or person. Reports added to the website are not automatically posted, but must be approved by the site. According to Ripoff Report's Terms of Service, users are required to affirm that the content they post is truthful and accurate.

18. Companies or individuals who have been named in a report may respond with a rebuttal on the webpage.

19. Since its inception, Ripoff Report has grown in popularity. In a typical week, more than 1 million visitors access Ripoff Report. It has been ranked among the top 1000 U.S. websites in terms of internet traffic.

20. Ripoff Report has several revenue streams. It sells ad space on its website and offers companies the option to pay for complaint investigations which can range in value from $5,500.00 and up to $100,000.00. Those who have been named in a complaint can also pay $2,000.00 to have a third-party arbitrator evaluate the posting. The site generates several million dollars of revenue a year.

21. Through unique internet coding and search engine optimization, Ripoff Report is able to cause its pages to appear at or near the top of internet search engine

5

results. For example, much of the content generated by the Ripoff Report will automatically appear on the first page of a Google search.

22.   Ripoff Report has a tab on its homepage entitled "Consumer Resources." Ripoff Report provides editorial content on its site and in the Consumer Resource section.

23.   Ripoff Report has various employees who are paid to manage the website and oversee its content. The website also pays for content which it posts on the site.

24.   Xcentric is not merely a website operator because even after a user posts statements on the Ripoff Report and the user indicates that he or she wants their postings removed, Ripoff Report makes the decision to leave and/or keep the posting on the website, without regard to the personal directive of the user. In doing so, Xcentric takes ownership of the content of the posting and the content therein, thereby making the misinformation and defamatory statements at issue Xcentric's own misinformation and defamation as set forth herein. Additionally, Xcentric was paying for the content generated as set forth herein and taking ownership thereof through monetary gain.

25.   Xcentric, in deciding to keep knowingly false statements made by users and those on its payroll, has for all intents and purposes become the publisher of those posts and statements contained therein.

*Events Pre-Dating The Killing of Dustin Wehde*

26.   Pitman and Richter were married on August 14, 1988. The marriage produced one child, B. Pitman, who was born on February 1, 1990. In June, 1992, Pitman and Richter separated and Richter filed for divorce. Their divorce proceedings were highly contentious and lasted approximately six years. During the divorce proceedings, Richter falsely accused Pitman of sexual molestation of their son

6

immediately after Pitman raised concerns about physical mistreatment of their son during a deposition. Pitman denied the allegations and contended that Richter forged his signature on a life insurance application. There were also allegations that Richter tried to kill Pitman. The divorce concluded with Richter and Pitman being awarded joint legal custody, with Richter being the primary custodian and Pitman have visitation rights.

27.    After the divorce, Richter met and subsequently married Michael Roberts in 1996. This marriage produced two children.

28.    In 1998, Richter and Michael Roberts moved from Chicago, Illinois to Early, Iowa. During their residency in Early, Iowa, Richter met and befriended her neighbor Dustin Wehde ("Wehde").

29.    Two years later, Richter again falsely accused Pitman of molesting their son shortly after her current Husband was jailed on domestic violence charges. Pitman denied the allegation and asked the court to award him full custody in an effort to deflect the repeated attempts of Richter to alienate their son from Pitman by denying visitation on multiple occasions. A final custody/visitation hearing involving Pitman and Richter was scheduled to be heard in December, 2001.

*The Aftermath of the Wehde Murder*

30.    Days before the custody hearing between Pitman and Richter, Wehde was killed. Richter, using two (2) different firearms, fired eleven shots at Wehde. Nine bullets struck Wehde. An expert later testified that one of those three shots had been fired into the victim's skull about fifteen minutes after the first two. B. Pitman was present in the home when Wehde was murdered.

7

31.     Richter claimed she was acting in self-defense and that Wehde broke into her home and attacked her. During the murder investigation, law enforcement located a spiral notebook in Wehde's car which contained what appeared to be a journal maintained by Wehde. The journal claimed that Wehde was hired by Pitman and his attorney to stalk, harass and ultimately murder Richter and her son. The existence of the notebook was not made public.

32.     Two months after the murder, Richter confided in a friend that law enforcement discovered the notebook which proved that Pitman was responsible for the home invasion and attempt on her life.

33.     On February 13, 2002, Richter sent the investigating officer a letter outlining the reasons why she believed Pitman was involved in the home invasion and attack. Subsequently, Richter attempted to persuade law enforcement to arrest Pitman.

34.     Despite Richter's requests that law enforcement investigate Pitman, Pitman was never charged or arrested in connection with the incident and was rapidly cleared of any possible involvement in the shooting.

35.     Richter was not initially arrested or charged with the murder of Wehde.

36.     Approximately two years after the murder, Wehde's estate filed a wrongful death lawsuit against Richter, which was ultimately dismissed. Eight months later, in 2004, Michael Roberts filed for divorce from Richter. These divorce proceedings were also contentious and Richter made allegations that Michael Roberts was guilty of domestic and child abuse. Michael Roberts also claimed that Richter tried to kill him.

8

37.   In 2005, Richter, who was still obsessed with the murder, asked law enforcement about the spiral notebook recovered from the murder scene.

38.   On January 31, 2008, the Buena Vista District Court, entered its final order in the Michael Roberts and Richter's custody/visitation proceedings. While the court awarded Richter with primary custody the court stated "Tracey is very deviceful [sic]; she usually has a plan or scheme to effect [sic] a purpose."

39.   In 2010, in separate cases, Richter was convicted of felony fraud (in Nebraska) and perjury (in Iowa). However, no charges were filed against anyone in connection with Wehde's murder for nearly 10 years and Richter's story of a botched home invasion appeared to be well-taken.

*Richter is Charged with Murder*

40.   In November 2010, Ben Smith ("Smith") was elected to serve as Sac County (Iowa) Attorney. Soon after he took office, he began an investigation into the death of Wehde. Ultimately, Smith decided to charge Richter with first degree murder.

41.   Richter was arrested on July 27, 2011. The criminal complaint against Richter alleged that she had knowledge of evidence that was found in Dustin Wehde's car but was never publicly disclosed by law enforcement.

42.   The day Richter was arrested, her mother, A. Richter told the Sac County Attorney's office that "You have destroyed a family" and "I have nothing else to lose."

43.   Following her arrest, Richter implored her fiancé and A. Richter to contact a potential witness about a journal implicating Pitman.

9

44. Richter's arrest resulted in Michael Roberts securing custody of their two children who were relocated to California and enrolled in the State of California's victim protection program.

45. Prior to the start of Richter's trial, Meade, who had a previously contentious relationship with Michael Roberts, took an interest in Richter and her trial. Meade's interest grew into an obsession.

46. Meade is a computer specialist who had a background in technology ventures. At this time, Meade was also forging a relationship with Magedson and Xcentric.

47. Richter's trial began in October, 2011. Various witnesses testified against Richter, including Pitman. On November 7, 2011, a Webster County, Iowa jury convicted Richter for the murder of Wehde.

48. In the days following Richter's conviction, A. Richter, B. Pitman and Meade began discussing how to overturn the conviction. Richter was relaying defamatory and false information about Pitman and other witnesses to A. Richter and B. Pitman who provided it to Meade.

49. On December 5, 2011, Richter was sentenced to life in prison without the possibility of parole.

*Post-Trial Actions of Richter*

50. Upset and reeling from her conviction, Richter appealed, a process that would take over a year.

51. In December, 2012, Richter began her plans to attempt to overturn her murder conviction and life sentence. Through A. Richter, Richter contacted Meade to assist with her post-conviction efforts. Richter, B. Pitman, A. Richter and Meade planned

10

to investigate witnesses and to attempt to have those witnesses recant their trial testimony. Richter and her newly formed team were especially focused on Pitman.

52.     Meade, now an employee and/or agent of Xcentric, began using the Ripoff Report to post harassing and defamatory stories about witnesses in Richter's trial. These posts were approved by Xcentric and maintained according to the Ripoff Report's practices outlined above.

53.     On January 1, 2012, Richter asked A. Richter to get her son to get "[Pitman's] former girlfriend, to turn on Pitman.". Richter told A. Richter that "it would be heaven" and would "serve [Pitman] right" if he was betrayed by his son.

54.     Richter and A. Richter asked B. Pitman to gather information that would prove Pitman lied when he testified against Richter. B. Pitman agreed and began contact employees of Pitman's plastic surgery practice to get information on Pitman. Richter asked B. Pitman to give A. Richter the contact information for Pitman's girlfriend.

55.     Richter, B. Pitman, A. Richter and Meade began collectively gathering information on Pitman and PPS, PPS' employees, PPS' patients and Pitman's romantic partners. They planned to use this information to persuade Pitman to recant his trial testimony against Richter. Richter also asked that B. Pitman, Meade and A. Richter to gather information on Michael Roberts.

56.     On January 3, 2012, A. Richter told Richter that Meade was going after Michael Roberts. At the same time, Meade was also investigating the Plaintiffs at the request of Richter, B, Pitman and A. Richter.

57.     On January 20, 2012, Richter told B. Pitman that he needed to work his magic to talk to Pitman's nurses to see if any of them had information that would prove

that Pitman lied when he testified against Richter. B. Pitman agreed and began contacting Pitman's employees and ex-girlfriends. B. Pitman and Richter agreed to provide this information to A. Richter and Meade in an attempt to discredit and defame Pitman.

58.     Meade, who had now solidified his relationship with Magedson, began discussing Richter's trial with him. Magedson became interested in Richter's trial and conviction. Xcentric employed Meade to assist in attempting to exonerate Richter. These efforts included using the Ripoff Report to discuss the case and the websites prominence to attempt to influence witnesses to change their testimony. These efforts also included using the information Meade had collected from Richter, A. Richter and B. Pitman to formulate posts on the Ripoff Report.

59.     A. Richter, at the request of Richter, and on her own began communicating with Magedson with the assistance of Meade. Magedson asked A. Richter to obtain information about Pitman and others so they could post it on Ripoff Report. A. Richter and B. Pitman agreed to obtain and provide this information for use on the Ripoff Report.

60.     A. Richter began sending Meade, Magedson and Xcentric weekly packages of documents concerning Richter and her trial. These documents included information that B. Pitman and A. Richter had gathered concerning the Plaintiffs.

61.     Magedson, Meade, Richter, B. Pitman and A. Richter knew Pitman was a successful plastic surgeon and had substantial income through his business, PPS.

62.     Meade, Magedson and Xcentric were interested in the Plaintiffs given their financial standing. Given the profit structure of Ripoff Report, Xcentric and

12

Magedson saw an opportunity for financial gain by posting information on the Ripoff Report about the Plaintiffs and then charging them substantial fees to remove or edit the posts.

*Initial Ripoff Report Postings*

63.    After Richter was convicted, posts about her case began appearing on Ripoff Report. Many of the posts were authored by Meade and others were submitted anonymously. All of the posts were approved and published by the Ripoff Report. Many posts concerning Richter were bizarre and often contained disconnected words and phrases.

64.    On September 11, 2012, Meade posted Ripoff Report complaint number 938843 which outlined what he claimed to be his independent investigation into the facts of Wehde's murder, Richter's trial and her conviction. On September 21, 2012, Meade posted additional information about Richter's trial under the title:

> Ben Smith Prosecutorial Misconduct Allowing Witnesses To Knowingly Lie \ Tracey Richter Had Several Million Dollars Stolen By Mile2 and Xellex \ Bounty Shared Amongst Prosecution Witnesses.

65.    These and similar posts were approved by Magedson and Xcentric. At this time, Xcentric was paying Meade for content that he posted to Ripoff Report, including the posts concerning the Plaintiffs and Richter's trial. His posts contained the content generated by Richter, A. Richter and B. Pitman.

66.    This complaint, along with its various replies, updates and rebuttals, falsely accused various witnesses who testified against Richter of committing murder, theft, perjury, and child molestation. Other posts and comments accused witnesses and

13

those involved in Richter's trial and investigation with having sexually transmitted diseases.

*Immediately After Richter's Appeal is Denied Additional Ripoff Report's Postings Target Pitman*

67.     On January 9, 2013, the Court of Appeals of Iowa affirmed Richter's murder conviction. *See State v. Richter*, 828 N.W.2d 326 (Iowa Ct. App. 2013).

68.     Realizing she could not overturn her conviction through the appeals process, Richter's efforts turned more sinister. From jail, Richter contacted B. Pitman and A. Richter and requested that they begin using Meade, Madgeson and Xcentric to post false and defamatory information against the Plaintiffs in retaliation for Pitman not recanting his testimony.

69.     Twelve days after Richter's appeal was denied, on January 21, 2013, complaint number 1000888 was posted on the Ripoff Report which held the following title:

> Dr. John Pitman III, MD Peninsula Plastic Surgery Center, Pitman Surgical Associates, Estranged Ex Husband Key Witness Arrested by 6 Armed Officers at Plastic Surgery Practice, United States Army Col Office Locations: Williamsburg, Hayes, Newport News Embarrassment to the prosecution knowingly lies in court, deadbeat hack plastic surgeon, United States Army Reserve Cornel Lisa Pitman Williams, Virginia

70.     Complaint number 1000888 also stated that "John Pitman, intentionally withheld information from prosecutors that he was near bankrutcy (sic) when he struck a pay-to-testify deal in the Tracey Richter murder trial. Pitman, notorious for his on-going drug use and his pay-for-play with local strippers had his car repossessed; and continued to provide boob jobs for his pole dancing friends."

14

71.    Complaint number 1000888 included a picture of Pitman and several "updates" to the post detailed various lawsuits in which Pitman was alleged to be involved in.

72.    One of the updates was titled "Dr. John Pitman and Michael Roberts, Vegas orgies, she/he and he/he twister, doctor prescribing pain pills for sex fueled nights."   Under that post, Pitman was referred to as "Dr. Boob Job" and accused him of soliciting prostitution for plastic surgery.

73.    On January 21, 2013, twenty-one days after Richter's appeal was denied, complaint number 1005913 was posted on the Ripoff Report. This complaint was titled:

> Dr. John Pitman cheats on wife Lisa Pitman with rapper Lachesis. Dr John
> Pitman broke with multiple tax IRS tax liens, finances video for Lachesis
> which has a brutal home invasion murder similar to th (sic) husband
> cheats on dead fish wife Lisa Pitman, Allisan Tucker, Tracey Richter
> murder trial, sac county iowa Williamsburg, Virginia.

74.    Ripoff Report complaint number 1049232 included the following title:

> Tracey Richter falsely convicted. Ben Smith Sac County Iowa Michael
> Roberts Rexxfield Exposed Audio recording proves Prosecutor's friend
> Michael Roberts motive and opportunity, confesses he claimed Dr. John
> Pitman baby raper. Sydney Morning Herald disgrace Sac City Iowa

75.    Magedson and Xcentric were advised by Meade that he would be posting about the Plaintiffs in the manner highlighted by the above complaints which appeared on the Ripoff Report.  Meade was paid by Magedson and Xcentric for the content he posted about the Plaintiffs.

76.    All of the posts displayed on the Ripoff Report concerning the Plaintiffs were false and misleading.

77.    All of the posts displayed on the Ripoff Report were posted through the collective efforts of the Defendants, at the request of one or more of the Defendants and

15

with the purpose of influencing Pitman to recant his testimony in Richter's murder trial and/or otherwise assist Richter in her post-conviction relief efforts, with the purpose of damaging the Plaintiffs' business dealings, and/or with the purpose to extort money from the Plaintiffs to remove and/or alter the posts.

78.     The Defendants also sought to impede, influence and/or obstruct the administration of justice using the Ripoff Report as a medium to transmit their false and misleading information.

79.     Upon information and belief, other complaints were posted about the Plaintiffs on the Ripoff Report with the same goals and intentions of the collective efforts of the Defendants.

*The Ripoff Report Complaints Directly Impact Pitman's Medical Practice Causing Him To Lose Substantial Business*

80.     Given the prominence of Ripoff Report postings in search engine results, the complaints about the Plaintiffs began reaching the public and the Plaintiff's patients and potential patients.

81.     Since its inception, PPS had been a profitable and successful plastic surgery center focused around the skills of Pitman.

82.     For example, in 2011, PPS generated over $700,000.00 in income. In prior years, PPS generated over $1,000,000.00 in income. Pitman was paid from the sales generated at PPS.

83.     For PPS and Pitman to succeed and be profitable, it was necessary, year to year, for PPS to generate additional patients and to maintain the clientele it had generated in prior years.

16

84.   PPS' greatest asset was the skill of Pitman and the goodwill it developed with its patients and the public.

85.   The plastic surgery industry is very competitive.  The skills of a plastic surgeon and the reputation of that surgeon are paramount in attracting patients and generating business.

86.   The Plaintiffs financial success depended on maintaining its clientele, protecting its patient base, generating new patients and protecting the reputation of the business in the community.

87.   Pitman's reputation in the plastic surgery profession was extremely important to PPS' success.  If Pitman's reputation was tarnished in any way, it would have a substantial negative impact on PPS' ability to recruit new patients and maintain its patient base.

88.   Plaintiffs had a business expectancy in their clients/patients and future clients/patients based upon the past success of the Plaintiffs.  The past success of the Plaintiffs was an indicator of future success.  The future and continued success of the Plaintiffs was reasonable and afforded them with the probability of future economic benefits.

89.   The Defendants, through their familiarity with Pitman, knew about his success and the success of PPS.  Further, through Richter, A. Richter and B. Pitman, the other Defendants gained an understanding of the business expectancies of Pitman and PPS.  Simply stated, the Defendants knew about the business expectancies of the Plaintiffs and they knew that the Plaintiffs had the potential for future income and clientele/patients.

17

90.   After posts concerning the Plaintiffs began appearing on the Ripoff Report and with prominence in search engine results, the Plaintiffs business declined dramatically.  Specifically, clients/patients left the practice, potential clients/patients (who had paid deposits for surgeries) unilaterally cancelled their scheduled surgeries, and new business declined dramatically.  For example, Pitman's cosmetic cases dropped from approximately 90 cases in 2012 to 15 cases in 2013.

*The Ripoff Report Attempts to Extort Pitman in an Effort to Maximize Profits*

91.   Mere months after the first posts concerning Pitman appeared on the Ripoff Report, the Plaintiffs were contacted by an employee of Xcentric.

92.   On August 29, 2013, an employee of Xcentric called the Plaintiffs in reference to the posts on the Ripoff Report.  The caller advised that the Plaintiffs could have the posts removed if they paid $10,000.00 in two payments and continued to make monthly payments into perpetuity despite the fact that Xcentric knew that said statements were false and defamatory.

93.   Employees of Xcentric, acting at the request of Magedson, demanded money from the Plaintiffs to remove the false and misleading statements posted about the Plaintiffs on the Ripoff Report.

94.   Xcentric and its employees made multiple attempts to secure money from the Plaintiffs.

95.   Plaintiffs advised Xcentric that all of the postings were false and misleading.  Despite this fact, and Xcentric's knowledge thereof, it refused to remove the postings.

96.   Xcentric, in failing to remove the postings, is now the publisher of the content set forth in the postings contained herein.

97.   When Xcentric was asked to remove the postings, they again demanded that the Plaintiffs pay to have the postings removed.

98.   Magedson and Xcentric knew that by failing to remove the posts it would damage the Plaintiff's business, would damage Pitman's goodwill in the community and would destroy his future business expectancies/income.  This tactic was deliberate and continued existence of the postings was purposefully used to threaten and inject fear upon the Plaintiffs.

99.   The result of Magedson's and Xcentric's willful decision to disregard the Plaintiffs' request to take down the postings is harming and will continue to harm the Plaintiff's in the following ways, among other things:

a.   Potential and actual loss of patients who read the postings;

b.   Loss of quality employees who read the postings;

c.   Loss of current PPS patients;

d.   Loss of future PPS patients;

e.   Pitman's loss of expected future income; and

f.   Loss of PPS' goodwill with its patients, the loss of good will in the plastic surgery profession, and the loss of goodwill PPS and Pitman worked to create with its patients and regulatory authorities.

100.   As a direct result of the Defendants actions, the Plaintiffs have lost substantial business, income, and goodwill in their profession.

*The Defendants Actions Continue Today*

101.   The actions of the Defendants have not ceased.  The posts highlighted above (among others) continue to appear prominently in search engine results and on the Ripoff Report.

19

102.   The Ripoff Report prominently features information on Richter's trial.  In fact, the Ripoff Report's home page has two prominent posts concerning Richter's trial. One, under the heading "Free Tracy Richter," features a photo of Richter and B. Pitman and states "A Son's Plea: "We are humbly asking for your help in our quest for justice for my mother, Tracey Richter. She was falsely convicted of murder in 2011 for defending her family in a house invasion that occured (sic) in 2001."

103.   Following these and other links, makes locating the posts about the Plaintiffs easier.

104.   The Free Tracey Richter Legal Defense Fund is also accessible through links on the Ripoff Report.  Magedson has contributed to this fund

## COUNT I
## (TORTIOUS INTERFERENCE)
### (Against all Defendants)

105.   Plaintiffs incorporate, by reference, paragraphs 1 through 104, as if fully set forth herein.

106.   Plaintiffs established or expected to establish a business relationship or expectancy with a probability of a future economic beneficial relationship.  This expectancy, among other things, was with the Plaintiffs' patients for the performance of medical services.

107.   Defendants had knowledge of the Plaintiffs' existing business relationships and expectancies with a probability of a future economic beneficial relationship created by the Plaintiffs' relationship with their customers/patients.

108.   Defendants tortiously interfered with these business relationships and expectancies.

109.   Defendants intentionally and through improper methods, including, but not limited to, defamation, extortion, attempted extortion, conspiracy to commit extortion, witness retaliation and witness tampering prevented the Plaintiff from performing his existing or expected business.

110.   The Plaintiffs suffered damages as a result of Defendants' tortious interference because they were unable to recover expected profits and wages.

111.   Defendants acted willfully, maliciously and/or recklessly in preventing the Plaintiffs from fulfilling their existing or expected business.

112.   The actions of the Defendants injured the Plaintiffs' reputation and business good will.

113.   As a direct and proximate result of Defendants tortious interference with Plaintiff's business relationships and expectancies with the probability of future economic benefit, the Plaintiffs have suffered and seek compensatory damages and punitive damages.

## COUNT II
### (COMMON LAW CONSPIRACY)
### (Against all Defendants)

114.   Plaintiff incorporate, by reference, paragraphs 1 through 104, as if fully set forth herein.

115.   Thought the actions outlined herein, Defendants mutually undertook to willfully and maliciously injure the Plaintiffs in their reputation, trade and business.

116.   Defendants, without legal justification, though unlawful means, and in concert with one another, interfered, intimated, mislead, and tampered with the Plaintiffs' current and future customers/patients.

21

117.   The Defendants, acting intentionally, without legal justification and in concert with one another, made arrangements, though unlawful means, to defame, extort, tamper and retaliate against the Plaintiffs.

118.   As a direct and proximate result of the conspiracy, Plaintiffs suffered damages associated with the loss of business, injury to their reputation and business good will.

119.   In conspiring to injure the business of the Plaintiffs though the acts described above, Defendants acted with malice and reckless disregard as to the rights of the Plaintiffs.

120.   As a direct and proximate result of Defendants conspiracy, the Plaintiffs have suffered and seek compensatory damages and punitive damages.

121.   Plaintiffs also seek an order enjoining the Defendants from benefiting from their unlawful acts by prohibiting them from either direct or indirectly, interfering with the Plaintiffs' business and customers/patients.

## COUNT III
### (STATUTORY BUSINESS CONSPIRACY)
### (Asserted on behalf of PPS only)
### (Against all Defendants)

122.   PPS incorporates, by reference, paragraphs 1 through 104, as if fully set forth herein.

123.   In violation of Virginia Code §§ 18.2-499, *et. seq.*, the Defendants intentionally conspired with one another, for the purpose of willfully and maliciously injuring PPS in its business and trade.

124.   As a direct and proximate cause of the conspiracy in violation of Virginia Code §§ 18.2-499, *et. seq.*, PPS has suffered damages associated with the loss of

22

business, loss of customers and injury to the PPS' reputation and business good will and customers in light of the Defendant's unlawful acts.

125.    As a direct and proximate result of Defendants conspiracy, PPS has suffered and seek compensatory damages and punitive damages.

126.    PPS prays that the Defendants be ordered to pay, pursuant to Virginia Code § 18.2-500, treble damages in an amount equal to three times the amount of compensatory damages.

127.    PPS also prays that the Defendants be ordered to pay, pursuant to Virginia Code § 18.2-500, all costs and attorney's fees incurred in this action.

128.    PPS also seeks an order, pursuant to Virginia Code § 18.2-500, enjoining the Defendants from benefiting from their unlawful acts by prohibiting them from either direct or indirectly, interfering with the Plaintiffs' business and customers.

**COUNT IV**
**(DECLARATORY JUDGMENT)**
**(Against Defendant Xcentric)**

129.    Plaintiffs incorporate, by reference, paragraphs 1 through 104, as if fully set forth herein.

130.    There is an actual and immediate controversy between the Plaintiffs and Xcentric within the meaning of Virginia Code §§ 8.01-184, et seq., as to the parties' respective rights and legal relations in connection with the defamatory information contained on the Ripoff Report described herein and this controversy is concrete and capable of judicial resolution.

131.    Plaintiffs contend that the information contained on the Ripoff Report is false and defamatory and have advised Xcentric of the illegal nature of its posts.

23

132.   Plaintiffs have repeatedly requested that the Ripoff Report posts be removed given their defamatory nature.

133.   Plaintiffs are entitled to have this Court determine whether Xcentric's acts are unfair and improper.

134.   Plaintiffs are entitled to have this Court determine whether Xcentric's conduct has or will cause damage to the Plaintiffs.

135.   Plaintiffs are entitled to have this Court determine the appropriateness of injunctive relief to restrain ongoing and future violations of the law.

## COUNT V
### (INJUNCTIVE RELIEF)
### (Against Defendant Xcentric)

136.   Plaintiffs incorporate, by reference, paragraphs 1 through 104, as if fully set forth herein.

137.   Defendant Xcentric has failed and refused to remove the disruptive, false and defamatory posts from its website- Ripoff Report.

138.   The continued dissemination of the Ripoff Report posts substantially and unfairly harms the Plaintiffs' business reputation and interferes with their current and potential customers. If Xcentric's conduct is allowed to continue unchecked, the Plaintiffs' will be irreparably harmed.

139.   Plaintiffs have developed substantial goodwill with their customers/patients.

140.   If Xcentric's conduct continues, Plaintiffs will suffer irreparable harm. Further, Plaintiffs are justifiably concerned that they may lose additional valuable business, patients and other income.

24

141. The choice of Xcentric to disregard the Plaintiffs' requests to remove the Ripoff Report posts are harming and will continue to harm the Plaitniffs in the following ways, among other things:

    a.    Potential loss of employees who read the posts;

    b.    Loss of current and future customers/patients; and

    c.    Loss of goodwill in the market place;

142. The Plaintiffs also suffer irreparable harm because the full extent of damages caused by Xcentric's conduct is ongoing and will continue so long as the Ripoff Report posts remain available to the public.

143. Plaintiffs are likely to prevail on the merits.

144. Granting injunctive relief will not disserve Xcentric's interests because its interests can be preserved.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants as follows:

1. That the Plaintiffs be awarded compensatory damages against the Defendants, jointly and severally, in the amount of Fifteen Million Dollars ($15,000,000) pursuant to Counts I and II.

2. That Plaintiff PPS be awarded compensatory damages against the Defendants, jointly and severally, in the amount of Fifteen Million Dollars ($15,000,000) pursuant to Count III.

3. That Plaintiff PPS be awarded treble damages pursuant to Count III;

4.    That the Plaintiffs be awarded punitive damages against the Defendants, jointly and severally, pursuant to Counts I, II and III in the amount of Three Hundred-Fifty Thousand Dollars ($350,000);

5.    That the Plaintiffs, based on all Counts, be awarded a total of Sixty Million Three Hundred-Fifty Thousand Dollars ($60,350,000) against the Defendants, jointly and severally.

6.    That Plaintiff PPS be awarded attorneys' fees, costs and expenses against the Defendants pursuant to Count III or as otherwise provided by law;

7.    That Plaintiffs be awarded declaratory relief as requested;

8.    That Xcentric and all persons acting on its behalf or under its direction or control and all successors thereto, be temporarily and permanently enjoined from maintaining the Ripoff Report posts on any website owned and/or controlled by Xcentric;

9.    That the Plaintiff be awarded pre-and-post judgment interest and costs; and

10.    That the Plaintiff be awarded such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues in this action that are so triable.

Respectfully submitted,

JOHN M. PITMAN, III, and
PENNISULA PLASTIC SURGERY
CENTER, LTD

By: _____
        Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com

Stephen M. Smith, Esq. (VSB #14362)
Seth D. Scott, Esq. (VSB #80907)
David B. Holt, Esq. (VSB #65564)
THE SMITH LAW CENTER
2100 Kecoughtan Road
Hampton, Virginia 23661
757-244-7000 (telephone)
757-245-7740 (facsimile)
sscott@attorneys4injured.com

*Counsel for Plaintiffs*

27

Tracey Richter-Roberts
Inmate # 6556599
420 Mill Street SW
Mitchellville IA 50169

Clerk of Court or Judge
Williamsburg/James City County
Civil Division
5201 Monticello Avenue Suite 6
Williamsburg VA 23188



October 17, 2016

Dear Sir/Madam,

My Counselor, Teema McGreggor, called me to her office today and handed me a copy of a lawsuit (case number: 830CL16001780-00). The attached paper states that it was served to me by a "SPECIAL PROCESS SERVER" and that service was issued October 6, 2016. That information is incorrect.

ICIW has an Electronic Law Library for inmates. However that library does not provide us access to the Virginia rules of civil procedure, forms for Virginia filings, or Virginia case law. The ELL contains Iowa case law and only federal case law for our specific federal district. It should also be noted that our access to the ELL is limited to 30 minutes when the library is open. The library isn't open every day and we can't print copies of the info found on the ELL. We spend most of our 30 minute time taking notes. As a result, I am unable to represent myself pro se. I also do not have enough to hire an attorney. I expect that any competent attorney will expect a rather larger retainer. I earn 56 cents per hour (45cents after mandatory restitution is deducted) and only work part-time.

The State of Iowa has an off-site law library that isn't user friendly. Inmates must request the specific pages of a specific book they would like copies. However the State of Iowa doesn't provide us with a list of the books available nor do we know what is included in the book. How do we know what pages to order if we haven't seen the book? We are allowed a minimal number of copies each month. We must pay in advance and the response can take over a month.

I'd like to request that the court appoint me an attorney to ensure that my civil rights are not violated. The suit makes some very serious allegations and the amount of the lawsuit is significant. I am confident that an attorney can disprove most of the claims made within the document that pertain to me. Failure to provide a competent attorney would seem to be a violation of my civil rights since it would be impossible to properly defend myself in here pro se.

If this request needs to be directed to the court via a specific format, please advise. If you need a financial affidavit filled out, please send me one.

Thank you very much for your time and thoughtful consideration in this very difficult matter.

Sincerely,

Tracey Richter Roberts

P.S. Ms. McGregor is not a process server. No one else was present when she handed it to me. If anyone else signed a sworn statement that they personally handed it to me or were present, that would be a false perjured statement.

VIRGINIA: IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

JOHN M. PITMAN, III

&

PENNISULA PLASTIC SURGERY CENTER, LTD.,

Plaintiffs

v.                                                    CIVIL NO. CL16001780-00

XCENTRIC VENTURES, LLC, et als

Defendants.

## MOTION CRAVING OYER

COMES NOW, the Defendants Anna Richter and Bert Pitman a.k.a Bert Richter, by counsel, and respectfully files this Motion "Craving Oyer" that the Plaintiffs John M. Pitman, III and Penninsula Plastic Surgery Center, LTD be compelled to produce the following documentation that is either explicitly or implicitly made a material and relevant allegation of fact in the Complaint. Each referenced number refers to the numbered paragraph of the Plaintiffs' Complaint:

16. The complete or relevant part of the Ripoff Report's homepage tag line.

17. The complete or relevant part of the Ripoff Report's Terms of Service.

22. The complete or relevant part of Ripoff Report's tab on its homepage entitled "Consumer Resources".

26. The complete or relevant part of documentation of accusations and denial of sexual molestation of Bert Pitman; and any joint custody order.

Printed On PAPERMILL By SCC SAMPLES

33. The letter Richter sent to the investi ating officer.

38. The final order in the Roberts-Richter custody visitation proceedings; and any memorialization "Tracey is very deviceful (sic) ;she usually has a plan or scheme to effect, (sic) a purpose."

41. The Criminal Complaint.

42. Any memo ' l'zation of Anna Richter's alleged statemen .

43. Any memorialization of Anna Richter being implored to contact potential witnesses.

48. Any memorialization of Anna Richter and Bert Pitman discussing how to overturn the conviction.

51. Any memorialization of Ric er contacting Anna Richter to contact Meade to investigate witnesses.

53. Any memorialization of Richter asking Anna Richter to get her son to get the former girlfrien to turn on Pitman.

54. Any memorialization of Ann Richter asking Bert Pitman to gather information that would prove Pitman lied.

55. Any mem ' l'zation of individually or collectively gathered information on the Pl 'ntiffs.

56. Any memorialization demonstrating Anna Richter or Bert Pitman told Meade to investigate the Plaintiffs.

57. Any memorialization that Richter told Bert Pitman to "work his magic"; and that Bert Pitman agreed to contact Pitman's employees or girlfriends.

59. Any memorialization that Magedson asked Anna Richter to obtain information about Pitman and others to be posted on Ripoff Report.

60. Any memorialization of "weekly packages" sent by Anna Richter.

65. Any memor'all   tion of "post " generated by Anna Richter or Bert Pitman.

6 ;. Any memorialization Richter contacted Bert Pitman from jail to defame the Plaintiffs.

77. Any memorialization of all the posts displayed on the Ripoff Report that were allegedly posted at the requests of Anna Richter and/or Bert Pitman.

79. Any memorialization the Defendants Anna Richter,and/or Bert Pitman were involved in the posting of the referenced complaints in this paragraph of the Complaint.

101. Any memorialization that the Defendants Anna Richter and/or Bert Pitman have continued to post defamatory comments on specific search engines and Ripoff Reports.

103. The specific "other links".

131. All specific information contained in the Ripoff Report that are false and defamatory and allegedly posted directly or indirectly by the Defendants Anna Richter and/or Bert Pitman.

PRINTED IN DISTRICT BY LEXLAW AN

ANNA RICHTER
BERT PITMAN a.k.a BERT RICHTER

By:_____

I ask for this:

_____
Thomas K. Norment, Jr., Esq. (VSB# 13108)
Kaufman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188
Ph: 757-259-3835
Fax: 1-888-360-9092

## CERTIFICATE

I hereby certify that I have forwarded a true copy of the foregoing to Aaron B. Houchens, Esq., via e-mail and First Class Mail ahouchens@shg-law.com Booker T. Washington Highway, Moneta, Virginia, 24121, and Seth D. Scott, Esq., at news4injured.com , 2100 Kecoughtan Road, Hampton, Virginia, 23661, this ____ October, 2016.

_____
Thomas K. Norment, Jr.

15165326v1

VIRGINIA:

IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

| | |
|---|---|
| JOHN M. PITMAN, III, et al. | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) Case No.: CL16001780-00 |
| | ) |
| XCENTRIC VENTURES, LLC, et al. | ) |
| | ) |
| *Defendants.* | ) |

<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS ANNA RICHTER AND BERT PITMAN'S MOTION FOR BILL OF PARTICULARS</u>

COMES NOW, Plaintiffs, John M. Pitman ("Pitman") and Peninsula Plastic Surgery Center, LTD. ("PPS") (collectively the "Plaintiffs"), and hereby submit this opposition to the Defendants' Motion for Bill of Particulars. In support of its opposition, the Plaintiffs state the following:

### PROCEDURAL BACKGROUND

This case alleges causes of action against six defendants, including Anna Richter and Bert Pitman, for tortious interference, common law conspiracy, and civil conspiracy under Virginia Code §§ 18.2-499- 500. On October 7, 2016, Anna Richter and Bert Pitman (collectively the "Defendants") were served with the Plaintiff's *26 page* Complaint. On October 26, 2016, the Defendants, by counsel, filed a Motion for Bill of Particulars.

The one (1) page Bill of Particulars did not request any specific information or otherwise advise the Plaintiff's of the alleged deficiencies in the Complaint. Instead, the Bill of Particulars simply alleges that the Complaint did "not provide notice of a claim adequate to permit...a fair opportunity to respond or prepare for the case."

1

Printed On 1/15/2017 By LCCUSROSH

## ARGUMENTS & AUTHORITIES

I.   Legal Standard

Rule 3:7(a) of the Rules of the Supreme Court of Virginia gives the trial court discretion
to order a bill of particulars "to amplify any pleading that does not provide notice of a claim . . .
adequate to permit the adversary a fair opportunity to respond or prepare the case." Although a
plaintiff is not required to plead in great detail, where the complaint does not provide enough
detail for the defendant "to respond or prepare the case," the defendant may request a bill of
particulars "to amplify" the plaintiff's claim(s). *Doe v. Va. Wesleyan College*, 90 Va. Cir. 345,
350 (City of Norfolk. 2015).

The object of a bill of particulars or a statement of the grounds of defense is to enable the
parties to prepare more intelligently for trial and to prevent surprise. *Orndorff v. Howell*, 181
Va. 383, 387 (1943). However, when the moving party either (1) has superior knowledge
pertaining to the subject matter of the suit or (2) would have access to the "amplified"
information through discovery, a bill of particulars is not necessary. *See Doe*, 90 Va. Cir. at 366;
*Hershey Chocolate of Va. v. Cnty. of Augusta*, 2015 Va. Cir. LEXIS 205 (noting that the notion
of a Bill of Particulars in civil cases can be something of an anachronism given the expanse of
modern discovery).

II.   The Complaint sufficiently puts the Defendants on notice of the claims against
them.

The Complaint contained 26 pages of specific factual allegations against each of the
Defendants. Specifically, the Plaintiffs provided facts that supported the various causes of action
against Anna Richter and Bert Pitman in paragraphs 48, 51, 53, 54, 55, 56, 57, 58, 59, 60, 61, 65,
68, and 89. These paragraphs outlined the actions that formed the basis of the Plaintiffs' claims

2

for tortious interference and conspiracy against Anna Richter and Bert Pitman. Frankly, it is unclear how much more factually "particular" the Plaintiffs could be in the pleading.

a. *The Defendants will receive more "particular" information during discovery in this matter.*

Even if the Complaint did not apprise the Defendants of every fact, as noted in the cases above, modern discovery rules have largely made a Bill of Particulars unnecessary. The Defendants will have the ability to obtain more information through discovery than the Plaintiffs could provide in a bill of particulars. Further, the Defendants have access to the communications and actions that make up the basis of the Plaintiffs' claims against them. If the Defendants need more "particular" information, they need only access their own emails and other communications, which were adequately described in the Complaint in the paragraphs listed above.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion for Bill of Particulars.

Respectfully submitted,

JOHN M. PITMAN, III, and
PENNISULA PLASTIC SURGERY
CENTER, LTD

By: _____
Of Counsel

Seth D. Scott, Esq. (VSB #80907)
JOSEPH SMITH, LTD.
2100 Kecoughtan Road
Hampton, Virginia 23661
757-244-7000 (telephone)
757-245-7740 (facsimile)
sscott@attorneys4injured.com

3

Printed On 11/14/2017 By LEXCAM@NAT

Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent to the following, via e-mail and first class mail, postage prepaid, this 3rd day of November, 2016.

Thomas K. Norment, Esq.
Kaufman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, Virginia 23188
(757) 259-3835 (Tel.)
(888) 360-9092 (Fax)
tknorment@kaufcan.com

4



VIRGINIA:

IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

JOHN M. PITMAN, III, et al.          )
                                     )
    *Plaintiffs,*                  )
                                     )
v.                                   )   Case No.: CL16001780-00
                                     )
XCENTRIC VENTURES, LLC, et al.       )
                                     )
    *Defendants.*                  )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS ANNA RICHTER AND BERT PITMAN'S MOTION CRAVING OYER

COMES NOW, Plaintiffs, John M. Pitman ("Pitman") and Peninsula Plastic Surgery Center, LTD. ("PPS") (collectively the "Plaintiffs"), and hereby submits this opposition to the Defendants' Motion Craving Oyer. In support of its opposition, the Plaintiffs state the following:

### PROCEDURAL BACKGROUND

This case alleges causes of action against six defendants, including Anna Richter and Bert Pitman, for tortious interference, common law conspiracy, and civil conspiracy under Virginia Code §§ 18.2-499- 500. On October 7, 2016, Anna Richter and Bert Pitman (collectively the "Defendants") were served with the Plaintiff's *26 page* Complaint. On October 26, 2016, the Defendants, by counsel, filed a Motion Craving Oyer for "documentation that is either explicitly or implicitly made a material and relevant allegation of fact in the Complaint."

### ARGUMENTS & AUTHORITIES

I.    **Legal Standard**

A motion to crave oyer is a request to require that a document sued upon, or a collateral document which is necessary to the Plaintiff's claim, be treated as though it were part of the Plaintiff's pleadings. *Resk v. Roanoke County*, 73 Va. Cir. 272, 273-74 (Roanoke County Cir.

1

Ct. 2007) (quoting *Ragone v. Waldvogel*, 54 Va. Cir. 581 (Roanoke 2001) (citing *Burton v. F.A. Seifert & Co.*, 108 Va. 338, 350, 61 S.E. 933 (1908); *Sjolinder v. American Enter. Solutions, Inc.*, 51 Va. Cir. 436 (2000); and 14 B Michie's Jurisprudence, *Profert and Oyer*, §§ 1-5 2006)).

A motion craving oyer requests the court force a party to file an operative document mentioned in the pleadings, but not attached. *See Smith v. Wolsiefer*, 119 Va. 247, 89 S.E. 115 (1916). A Defendant may crave oyer of all documents that are necessary to form a basis of the Plaintiff's claim, as all essential part of a pleading are necessary to form an intelligent construction of the pleadings. *See Culpepper Nat'l Bank v. Morris*, 168 Va. 379, 382, 191 S.E. 764 (1937).

A motion craving oyer is a request that the court order an adversary to "produce a governing instrument for incorporation with the pleadings." *Denny v. Prince*, 68 Va. Cir. 339, 341, n.2 (Portsmouth Cir. Ct. 2005) (citing Kent Sinclair and Leigh B. Middleditch, Jr., Virginia Civil Procedure, § 9.6 (4th ed. 2003)).

Several Virginia circuit courts have expressed the view that motions craving oyer should be limited to those documents that are necessary to the Plaintiff's claim. *Bagwell v. City of Norfolk*, 59 Va. Cir. 205, 207-208 (Norfolk Cir. Ct. 2002) (citing *Stoney v. Franklin*, 54 Va. Cir. 591 (Suffolk 2001) (stating that motions craving oyer should be limited to "those cases where the cause of action depended on a unique instrument, such as a deed, bond, or letters of probate"); *Ragone*, 54 Va. Cir. 581 (noting motions craving oyer are not appropriate for documents that are merely evidentiary material). In *Bagwell*, the court noted that "[t]he documents upon which Defendant is craving oyer are memoranda written by certain Plaintiff, other similarly situated plice personnel, and the City Manager regarding procedures…[t]hey are not documents upon which Plaintiff's base their claim…[r]ather, the documents are merely evidence…and they are

2

not properly considered in determining whether a valid cause of action has been pleaded." 59

Va. Cir. at 207-208.

 II. The Defendant's Motion   raving Oyer is improper and unwarranted.

 In the Defendants' Motion Craving Oyer, they did not request any document that would be the basis of the Plaintiffs' claims. They did not request a contract or any other written instrument (mainly because no written instrument governs the relationship between the parties). Rather, the Defendants sought what would best be characterized as evidence, which, while potentially relevant to the Plaintiff's causes of action and potentially discoverable, should not be the subject of a motion craving oyer. As the court stated in *Bagwell*, the documents sought to be attached to the Complaint by the Defendants "are not properly considered in determining whether a valid cause of action has been pleaded." Therefore, the Defendants Motion Craving Oyer should be denied.

CONCLUSION

 For the foregoing reasons, the Court should deny the Defendants' Motion Craving Oyer.

Respectfully submitted,

JOHN M. PITMAN, III, and
PENNISULA PLASTIC SURGERY
CENTER, LTD

By: _____
   Of Counsel

Seth D. Scott, Esq. (VSB #80907)
JOSEPH SMITH, LTD.
2100 Kecoughtan Road
Hampton, Virginia 23661
757-244-7000 (telephone)
757-245-7740 (facsimile)
sscott@attorneys4injured.com

Aaron B. Houchens, Esq. (VSB #80489)

3

STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent to the following, via e-mail and first class mail, postage prepaid, this 3rd day of November, 2016.

Thomas K. Norment, Esq.
Kaufman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, Virginia 23188
(757) 259-3835 (Tel.)
(888) 360-9092 (Fax)
tknorment@kaufcan.com

4



# ORIGINAL

## IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY
### CIVIL DIVISION

PENINSULA PLASTIC SURGERY                )
CENTER, LTD.                              )
                                         )
      Plaintiffs,                )    Case No.: 830CL16001780-00
                                         )
vs.                                      )
                                         )
XCENTRIC VENTURES, LLC, et al.,          )
                                         )
      Defendants.                )

## NOTICE OF REMOVAL

    Please be advised that on December 7, 2016, Defendant Xcentric Ventures, LLC

("Xcentric") filed a Notice of Removal in the United States District Court for the Eastern District

of Virginia (Newport News Division) for the above-captioned civil action.   All process,

pleadings, and orders served upon the Defendant to date in the above-entitled cause in the Circuit

Court for Williamsburg/James City County, Virginia were exhibited in the Notice of Removal.

    A copy of the Notice of Removal is attached to this Notice as Exhibit 1.

          Respectfully Submitted,

          DICKINSON WRIGHT PLLC

          H. Jonathan Redway (V.A. Bar No. 42189)
          Nicole M. Meyer (V.A. Bar No. 43029)
          Seth B. Waxman
          International Square Building
          1825 Eye Street N.W., Suite 900
          Washington, D.C. 20006
          Phone: (202) 457-0160
          Fax: (844) 670-6009
          Email: jredway@dickinson-wright.com
          Email: nmeyer@dickinson-wright.com
          Email: swaxman@dickinson-wright.com
          *Attorneys for Defendant Xcentric Ventures*

FILED
MONA A. FOLEY
CLERK CIRCUIT COURT
2016 DEC 12  AM 9: 25
CITY OF WILLIAMSBURG
COUNTY OF JAMES CITY
BY: _____ D.C.

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of the foregoing Notice of Removal was served upon the following via pre-paid First Class U.S. Mail on this 9th day of December, 2016 to:

**Counsel for Plaintiffs**

Aaron B. Houchens, Esq.
Stanley & Houchens, LLC
13508 Booker T. Washington Hwy.
Moneta, VA 24121
ahouchens@shg-law.com

Stephen M. Smith, Esq.
Seth D. Scott, Esq.
David B. Holt, Esq.
The Smith Law Center
2100 Kecoughtan Road
Hampton, VA 23661
sscott@attorneys4injured.com

**Counsel for Defendants Anna Richter and Bart Pitman**

Thomas Norment
Kaufman & Canoles
4801 Courthouse Street
Suite 300
Post Office Box 6000
Williamsburg, VA 23188
tknorment@kaufcan.com

H. Jonathan Redway

DC 64225-9 312373v1

# EXHIBIT 1

PRINTED DOCUMENTS PROVIDED BY LEXIS/NEXIS COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| PITMAN AND PENNISULA PLASTIC SURGERY CENTER, LTD. | ) ) | |
| Plaintiffs, | ) ) ) | Case No.:  _____ |
| vs. | ) ) | |
| XCENTRIC VENTURES, LLC et al., | ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the above captioned action, which was recently filed in the Circuit Court of Virginia for Williamsburg/James City County (the "State Court"), is hereby removed by the Defendant, Xcentric Ventures, LLC (hereafter "Defendant"), to the United States District Court for the Eastern District of Virginia, Newport News Division, by the filing of this Notice of Removal.   As grounds for removal, the Defendant states as follows:

1.    Plaintiff John M. Pitman, III commenced the following action in the Circuit Court for Williamsburg/James City County, Virginia: Pitman et al. v. Xcentric Ventures et al., Case No. CL 16001780-00 (the "State Court Action").

2.    The Complaint was filed in the State Court Action on or about October 5, 2016.

3.    Xcentric Ventures was served with the Summons and Complaint on November 17, 2016.

4.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed because it has been filed within 30 days of receipt of the Summons and Complaint.

1

5.      Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleading served upon the Defendant in the State Court Action are attached hereto as Exhibit A.

6.      Pursuant to 28 U.S.C.§ 1446(d), a Notice to Plaintiffs of the Filing of Notice of Removal and a copy of this Notice of Removal is being served upon Plaintiffs and filed with the Clerk of the Circuit Court for Williamsburg/James City County.  A copy of the Notice to Plaintiffs of the filing of Notice of Removal to be filed in the Circuit Court for Williamsburg/James City County is attached hereto as Exhibit B.

7.      This Court is in the district and division within which the action is pending.  28 U.S.C. § 1441(a).  The State Court is located in Williamsburg, Virginia.

8.      Defendant removes this case based upon diversity jurisdiction.

### JURISDICTION EXISTS UNDER 28 U.S.C. § 1332

9.      This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between all properly joined parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Plaintiff Is a Citizen of the State of Virginia.  For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  As evidenced by Plaintiff's Complaint, Plaintiff is a resident of the State of Virginia.  See Ex. A, Compl. ¶6.  Plaintiff did not allege that he has any intention of moving from the State of Virginia.  See Ex. A, Compl.

11.     No Defendant Is a Citizen of the State of Virginia.  As alleged in the Complaint, Defendants Tracey Richter and Anna Richter reside in Iowa (Ex. A ¶8-9); Defendant Xcentric Ventures, LLC is an Arizona limited liability company located in Phoenix, Arizona (Id.

2

Printed On 02/08/2017 By LECLAIR/RYAN

at ¶11);   Defendant Darren Meade resides in California; and Defendant Edward Magedson resides in Arizona.

12.   The Complaint's allegation that Defendant Bert Pitman is a resident of Virginia is incorrect.  As set forth in the Declaration of Edward Magedson, Exhibit C hereto, Defendant Pitman has an Iowa driver's license and a full time job in Iowa; was served with the Complaint in this case at his grandmother's home in Iowa, where he is currently residing; is registered to vote in Iowa; and voted in Iowa in the November 2016 Election. [Magedson Declaration, Ex. C at ¶4-6).

13.   Thus, complete diversity of citizenship exists between all Plaintiffs and all Defendants.

14.   Plaintiffs seek recovery of compensatory damages against the Defendants, jointly and severally, in the amount of $15,000,000.00 on Counts I and II; seek $15,000,000 plus treble damages to Plaintiff PPS pursuant to Count III; request that they be awarded punitive damages in the amount of $350,000.00; and request that based on all counts, they be awarded a total of $60,350,000.00. [Complaint, Ex. A, at Page 26].

15.   Pursuant to 28 U.S.C. § 1332(a) the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

16.   Notwithstanding that the jurisdictional requirements have been met, nothing in this Notice of Removal should be construed as an admission that Plaintiffs are entitled to any judgment in their favor.

## REMOVAL IS APPROPRIATE

17.   Based on the foregoing, removal of the State Court Action to this Court is appropriate pursuant to 28 U.S.C § 1441, *et seq.*

3

Printed On X/XX/2017 By LECLAIRRYAN

WHEREFORE, Defendant Xcentric Ventures, LLC removes the State Court Action from the Circuit Court of Virginia for Williamsburg/James City County at Williamsburg, to this Court, and respectfully request that this Court take jurisdiction of this civil action to the exclusion of any further proceedings in the State Court.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

/s/ H. Jonathan Redway
H. Jonathan Redway (V.A. Bar No. 42189)
Nicole M. Meyer (V.A. Bar No. 43029)
Seth B. Waxman (Currently Reactivating Admission)
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
Phone: (202) 457-0160
Fax: (844) 670-6009
Email: jredway@dickinson-wright.com
Email: nmeyer@dickinson-wright.com
Email: swaxman@dickinson-wright.com
*Attorneys for Defendant Xcentric Ventures*

4

Printed On 12/02/2017 by LECLAIRRYAN

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

PITMAN AND PENNISULA PLASTIC           )
SURGERY CENTER, LTD.                    )
                                        )
                Plaintiffs,             )       Case No.: _____
                                        )
vs.                                     )
                                        )
XCENTRIC VENTURES, LLC et al.,          )
                                        )
                Defendants.             )

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of the foregoing Notice of Removal was

served via pre-paid First Class U.S. Mail on this 7th day of December, 2016 on:

Aaron B. Houchens, Esq.
Stanley & Houchens, LLC
13508 Booker T. Washington Hwy.
Moneta, VA  24121
ahouchens@shg-law.com

Stephen M. Smith, Esq.
Seth D. Scott, Esq.
David B. Holt, Esq.
The Smith Law Center
2100 Kecoughtan Road
Hampton, VA  23661
sscott@attorneys4injured.com

Thomas Norment
Kaufman & Canoles
4801 Courthouse Street
Suite 300
Post Office Box 6000
Williamsburg, VA  23188
tknorment@kaufcan.com

/s/ H. Jonathan Redway
H. Jonathan Redway

PHOENIX 64225-9 339253v2

5

VIRGINIA:
IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

JOHN M. PITMAN, III

And

PENNISULA PLASTIC SURGERY CENTER, LTD          Case No: CL16001780-00

    *Plaintiffs*

v.

XCENTRIC VENTURES, LLC

and

EDWARD MAGEDSON

and

DARREN MEADE

and

TRACEY A. RICHTER

and

ANNA RICHTER

and

BERT PITMAN (a/k/a BERT RICHTER)

FILED
MONA A. FOLEY
CLERK CIRCUIT COURT
2016 DEC 27  PM 3: 32
CITY ...  ...  ...  JAMES
COUNTY OF JAMES CITY
.... D.C.

## MOTION FOR APPOINTMENT OF COUNSEL

As an incarcerated and indigent party to this case that does not have any access to the Virginia rules of civil procedure, I am respectfully re-requesting that the court appoint me counsel. Code 8.01-9 may allow this. I can't be sure without resources or access to a Virginia attorney for a confidential legal consultation.  My letters to the court and clerk of court, dated: Oct 17, Oct 29 and Nov 22, 2016, repeatedly made the same request.  Mrs. Cradic states in her only response to me on October 25th that the Judge confirmed that we do not appoint "court appointed" counsel to assist with civil cases. She instructs me to seek legal advice from an attorney or legal research team to protect my interest. However ICIW policy does not allow

confidential legal calls to out-of-state attorneys. As of today December 16, I have not been successful in the grievance process to amend this unfortunate situation. In fact, I have filed two grievances concerning the matter since November. This is an issue because the Plaintiff has access to all my recorded calls. The petition itself supports this as true.

I have not received any paperwork other than the original petition from the court. Requests for subpoenas have been ignored along with a subsequent request for the addresses of service for all the named parties.

If my format is incorrect, please accept my sincerest apologies. As you already know, I do not have access to the Virginia Rules of Civil Procedure nor am I competent to represent myself pro se. This only further supports my request for court appointed counsel.

If cost is an issue, assign the attorney' fees, costs and expenses to the plaintiff until the matter is resolved. If the plaintiff prevails in his case, those would be awarded to him against me. However if the defendants prevail, the petitioner dismisses the case or the court dismisses the case, the petitioner would be responsible for those expenses.

Not appointing counsel for me, would be a violation of my civil rights. I should be allowed due process before being deprived of property. If John were to prevail while I was denied a defense, I would have a very significant judgment ($60,350,000) against me. The Court has been aware that I am unable to defend myself while incarcerated at ICIW since my October 17, 2016 correspondence.

I don't know how Virginia does things but I have yet to receive any filings, paperwork, notices of appearances, etc... from the court. In Iowa, copies are provided to all parties of all filings. May I request that I receive copies of all filings, past-present- and future.

WHEREFORE, The Indigent and Incarcerated Defendant respectfully requests that the court appoint her legal counsel to defend her in this civil case.

Respectfully Submitted:

22 DEC 16

Tracey A. Richter-Roberts
#6556599
420 Mill Street SW
Mitchellville IA 50169

2

Printed for Tri-State I by LECLAIRRYAN

Virginia          JAMES/WILLIAMSBURG   COUNTY

In the ~~Iowa~~ District Court for ~~Polk~~ County

State of Iowa, or

John Pitman III          No. CL 1600 1780-00
Plaintiff/Petitioner + Penguin
vs.                     Plastic
                        Surgery
                        Clinic
                        LTD
                                    _____ Criminal
                                    ✓ Civil

Lucy A. Parton
Defendant/Respondent

## Financial Affidavit/Application for Appointment of Counsel

Name Terry Richard Parton   Social Security No. _____   D.O.B. 15 May 66

Address 420 Hill St. SW, Mitchellville IA 50169   Phone I DONT HAVE
        Street      City      State   Zip                A PHONE FOR
                                        Prison            YOU TO CALL ME
Pending charges NONE KNOWN                          Jail ✓ yes ___ no
Do you have a job? yes  Who do you work for? Iowa Dept of Corrections
How much do you earn before taxes or deductions? 56 cents each x 10hrs per hr/mo/yr
Does your spouse live with you? NO  Number of children living with you? 0
How many children are you paying child support for? 2
Does anyone who lives with you have a job? N/A  How much do they earn? N/A per hr/mo/yr
List all other income you, or anyone living with you has. I wouldn't know what
the other inmates (around) w/me make. I don't have any other earned income.
List amounts you pay monthly for mortgages, rent, car loans, credit cards, child support, any
other debts worth more than $100. I have over 300K in debts. I would
need access to my credit report + Iowa courts online for a complete itemized list
I understand that I may be required to repay the State for all or part of my attorney fees and costs. I may be
required to sign a wage assignment, and I must report any changes in financial status. I certify under penalty of
perjury that the statements I make in this application are true and that I am financially unable to employ an
attorney to represent me.

Date 12~22~16        Signature _____

ORDER

**The Court finds as follows:**
_____ Not eligible for court-appointed counsel.
_____ Income at or below 125% of guidelines, defendant unable to pay an attorney
_____ Income between 125% and 200% of guidelines, not appointing would cause substantial hardship.
_____ Income over 200% of guidelines, felony charge, not appointing would cause substantial hardship.

Application is _____ denied _____ approved, Attorney _____ is appointed
                                Attorney phone _____ Attorney FAX _____

Date _____   Judge _____

# EXHIBIT B

## DECLARATION OF DAVID A. WARRINGTON

Pursuant to 28 U.S.C. § 1746, I, David A. Warrington, state as follows:

1.      I am an adult and am competent to testify to the matters set forth herein.

2.      I am a partner at the law firm of LeClairRyan, A Professional Corporation, 2318 Mill Road, Suite 1100, Alexandria, VA 22314, and serve as counsel to Edward Magedson and Xcentric Ventures, LLC in this matter.

3.      On February 8, 2017, I accessed the Virginia State Corporation Commission ("VSCC") website and performed a search for the co-plaintiff, Peninsula Plastic Surgery Center, Ltd ("PPSC").

4.      PPSC is incorporated in Virginia and its principal office is located in Williamsburg, Virginia.

5.      A copy of the records I obtained from the VSCC website is attached as **Exhibit A**.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: February 10, 2017

_____
David A. Warrington

**Alert to corporations regarding unsolicited mailings from VIRGINIA COUNCIL FOR CORPORATIONS is available from the Bulletin Archive link of the Clerk's Office website.**



SCC Home |
Contact SCC |
Site Map |
Search



*Commonwealth of Virginia*
## State Corporation Commission

Virginia.gov

```
                                                                02/10/17
            CISM0180              CORPORATE DATA INQUIRY         08:29:13


      CORP ID: 0509669 - 8  STATUS: 01  FEE DELINQUENT    STATUS DATE: 11/01/16
    CORP NAME: Peninsula Plastic Surgery Center, Ltd.


   DATE OF CERTIFICATE: 10/01/1998 PERIOD OF DURATION:       INDUSTRY CODE: 71
   STATE OF INCORPORATION:  VA VIRGINIA        STOCK INDICATOR:  S STOCK
   MERGER IND:                        CONVERSION/DOMESTICATION IND:
   GOOD STANDING IND: N NO A-REPORT    MONITOR INDICATOR:
   CHARTER FEE:  50.00    MON NO:            MON STATUS:    MONITOR DTE:
     R/A NAME:  CHRISTOPHER L GRAFF

        STREET:  4912 ATHENS BLVD                       AR RTN MAIL:

          CITY:  VIRGINIA BEACH        STATE :  VA  ZIP:  23455-0000
   R/A STATUS:  4  ATTORNEY      EFF. DATE:  04/09/08  LOC : 228
   ACCEPTED AR#: 215 19 4183  DATE: 05/18/16               VIRGINIA BEACH
   CURRENT AR#: 215 19 4183  DATE: 05/18/16  STATUS: A  ASSESSMENT INDICATOR:  0
   YEAR    FEES    PENALTY    INTEREST    TAXES     BALANCE      TOTAL SHARES
   16     100.00    10.00                          110.00             5,000
```

(Screen Id:/Corp_Data_Inquiry)

https://cislweb.scc.virginia.gov/z_container.aspx

**Alert to corporations regarding unsolicited mailings from VIRGINIA COUNCIL FOR CORPORATIONS is available from the Bulletin Archive link of the Clerk's Office website.**



Commonwealth of Virginia
**State Corporation Commission**

Virginia.gov

```
                                                              02/10/17
         CISM1001    OFFICERS/DIRECTORS AND PRINCIPAL OFFICE   08:29:51

 CORPORATE ID: 0509669 8          CURRENT AR# 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 DATE 05/18/16
    CORP NAME: Peninsula Plastic Surgery Center, Ltd.


       STREET: 324 MONTICELLO AVE

         CITY: WILLIAMSBURG        STATE: VA  ZIP: 23185
  S  C                                      DIR REQUIRED: Y
  E  A                OFFICERS/DIRECTORS DISPLAY FOR AR#  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
  L  T              NAME                          TITLE          SIGN
     B   JOHN M PITMAN III                        P/S
```

(Screen Id:/Corp_Officer_Director PO_Inquiry)

**Alert to corporations regarding unsolicited mailings from VIRGINIA COUNCIL FOR CORPORATIONS is available from the Bulletin Archive link of the Clerk's Office web**

Home | Site Map | About SCC | Contact SCC | Privacy Policy

SCC eFile > Entity Search > Entity Details

Login | Create an Account

## SCC eFile
### Business Entity Details

Help

### Peninsula Plastic Surgery Center, Ltd.

#### General

SCC ID: 05096698
Entity Type: Corporation
Jurisdiction of Formation: VA
Date of Formation/Registration: 10/1/1998
Status: Fee delinquent
Shares Authorized: 5000

#### Principal Office

324 MONTICELLO AVE
WILLIAMSBURG VA23185

#### Registered Agent/Registered Office

CHRISTOPHER L GRAFF
4912 ATHENS BLVD
VIRGINIA BEACH VA 23455
VIRGINIA BEACH CITY        228
Status: Active
Effective Date: 4/9/2008

#### Select an action

File a registered agent change
File a registered office address change
Resign as registered agent
File an annual report
Pay annual registration fee
Order a certificate of good standing
Submit a PDF for processing (What can I submit?)
View eFile transaction history
Manage email notifications

[ New Search ]   [ Home ]

Screen ID: e1000

Need additional information? Contact sccinfo@scc.virginia.gov Website questions? Contact: webmaster@scc.virginia.gov
We provide external links throughout our site.
PDF(.pdf) Reader   Excel (.xls) Viewer   PowerPoint (.ppt) Viewer   Word (.doc) Viewer
Build #: 1.0.0.19949

# EXHIBIT C

<u>DECLARATION OF ANNA RICHTER</u>

Pursuant to 28 U.S.C. § 1746, I, Anna Richter, state as follows:

1.     I am an adult and am competent to testify to the matters set forth herein.

2.     I am one of the named defendants in the Complaint captioned *John M. Pitman, III, et al. v. XCentric Ventures, LLC., et al.*, Case No. CL16001780-00, filed and pending in the Circuit Court for Williamsburg/James City County, Virginia.

3.     The Complaint alleges, in paragraph 9, that I am a citizen of the State of Iowa, residing in Des Moines, Iowa. That statement is correct.

4.     It is my intent to remain in Iowa for an unlimited time and make Iowa my permanent home.

5.     As such, I was a domicile and citizen of the State of Iowa at the time this lawsuit was filed on October 5, 2016. I am also currently a domicile of the State of Iowa.

6.     I consent to removal of this action to federal court.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: January 7, 2017

Anna Richter

# EXHIBIT D

## DECLARATION OF BERT PITMAN

Pursuant to 28 U.S.C. § 1746, I, Bert Pitman, state as follows:

1.    I am an adult and am competent to testify to the matters set forth herein.

2.    I am one of the named defendants in the Complaint captioned *John M. Pitman, III, et al. v. XCentric Ventures, LLC., et al.*, Case No. CL16001780-00, filed and pending in the Circuit Court for Williamsburg/James City County, Virginia.

3.    My name is Bert Pitman. I am also known as Bert Richter.

4.    I was served with a copy of the Complaint on October 7, 2016 in Urbandale, Iowa.

5.    The Complaint alleges, in paragraph 10, that I am a citizen of the Commonwealth of Virginia, residing in Henrico, Virginia. That statement is false.

6.    Prior to July 2016, I resided at 2204 Kenmore Road, Henrico, VA 23228 between the approximate dates of July 1, 2015 to July 1, 2016.

7.    Since July 2016, I have been a citizen and resident of 4221 155th Street, Urbandale, Iowa 50327.

8.    I currently have no plans to return to the Commonwealth of Virginia.

9.    It is my intent to remain in Iowa for an unlimited time and make Iowa my permanent residence.

10.    I work, full-time at High Caliber Construction and Design, located at 9103 Swanson Blvd, Suite #4, Clive, Iowa 50325.

11.    I have an Iowa driver's license. Attached as **Exhibit A** is a copy of my driver's license.

12.    I am registered to vote in Iowa.   Attached as **Exhibit B** is a copy of my voter

registration card.

13.     I file my state and federal taxes as a resident of Iowa.

14.     I was served with a copy of the Complaint in this lawsuit in Urbandale, Iowa.

15.     As such, I was a domicile of the State of Iowa at the time this lawsuit was filed on October 5, 2016.  I am also currently a domicile of the State of Iowa.

16.     I consent to removal of this action to federal court.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: February 8, 2017

Bert Pitman





If your name and/or address on the front of this card is incorrect, please correct the information in the spaces below. Sign your name and return it in an envelope to this office.

If the information is correct, detach the card along the dotted line and carry it in your purse or billfold. If, at some later date, your name, party or address changes, you may use this card to report a change to your registration. Complete the changes in the spaces below and return the card in an envelope to:
DALLAS COUNTY AUDITOR, 910 COURT ST, ADEL, IA 50003-1482

| Voter ID | Date of Birth | Party | Registered 08/08/2016 |
|---|---|---|---|
| BERT ROBERT PITMAN 4221 155TH ST URBANDALE, IA 50323-2272 | | | |

Use For Dallas County Changes

NAME _____

ADDRESS _____

| Precinct URB13 | School District WAUKEE SCH | City / Township URBANDALE |
|---|---|---|
| Senate District 10 | House District 019 | Ward | Supervisor SUP DIST 1 |

MAILING ADDRESS _____

Polling Place   KAPLAN UNIVERSITY
4655 121ST ST URBANDALE, IA 50323

School Polling Place   WAUKEE SCHOOL ADMIN BLDG
560 SE UNIVERSITY AVE WAUKEE, IA 50763

City Polling Place   153 WALNUT HILLS CHURCH
12321 HICKMAN RD URBANDALE, IA 50323

PARTY _____   BIRTH DATE _____

DRIVERS LICENSE #

SIGNATURE _____

Issue Date
08/11/2016



# EXHIBIT E

## DECLARATION OF EDWARD MAGEDSON

Pursuant to 28 U.S.C. § 1746, I, Edward Magedson, state as follows:

1.    I am an adult and am competent to testify to the matters set forth herein.

2.    I am one of the named defendants in the Complaint captioned *John M. Pitman, III, et al. v. XCentric Ventures, LLC., et al.*, Case No. CL16001780-00, filed and pending in the Circuit Court for Williamsburg/James City County, Virginia.

3.    I am a citizen of the State of Arizona, residing in Arizona.

4.    It is my intent to remain in Arizona for an unlimited time and made Arizona my permanent home.

5.    As such, I was a domicile of the State of Arizona at the time this lawsuit was filed on October 5, 2016.  I am also currently a domicile of the State of Arizona.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: February _8_, 2017

Edward Magedson

# EXHIBIT F

## DECLARATION OF ADAM S. KUNZ

Pursuant to 28 U.S.C. § 1746, I, Adam S. Kunz, state as follows:

1.     I am an adult and am competent to testify to the matters set forth herein.

2.     Xcentric Ventures, LLC ("Xcentric") is one of the named defendants in the Complaint captioned *John M. Pitman, III, et al. v. XCentric Ventures, LLC., et al.*, Case No. CL16001780-00, filed and pending in the Circuit Court for Williamsburg/James City County, Virginia.

3.     I am in house counsel for Xcentric.

4.     Xcentric is a limited liability company organized in Arizona.  Xcentric's principal place of business is in Arizona.

5.     Xcentric's sole member is Creative Business Investment Concepts, Inc ("CBIC").

6.     CBIC is a Nevada corporation, organized under Nevada's laws.

7.     CBIC's principal place of business is Arizona.

8.     Xcentric consents to the removal of this action to federal court.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Dated: February __, 2017

Adam S. Kunz

# EXHIBIT G

VIRGINIA:

IN THE CIRCUIT COURT FOR WILLIAMSBURG/JAMES CITY COUNTY

| | | |
|---|---|---|
| JOHN M. PITMAN, III and PENINSULA PLASTIC SURGERY CENTER, LTD. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: CL16001780-00 |
| | ) | |
| XCENTRIC VENTURES, LLC, EDWARD MAGEDSON, DARREN M. MEADE, TRACEY A. RICHTER, ANNA RICHTER, BERT PITMAN (a/k/a BERT RICHTER) | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendant, Edward Magedson,[1] pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby

provides notice that he has filed a Notice of Removal in this action with the United States

District Court for the Eastern District of Virginia, Newport News Division. A true copy of the

Notice of Removal filed with the federal court is attached hereto as **Exhibit A**.

Dated: 2/10/17

Respectfully submitted,

David A. Warrington (VSB No. 72293)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com

*Counsel for Edward Magedson and
Xcentric Ventures, LLC*

---

[1] Undersigned counsel also represents Xcentric Ventures, LLC in this matter. However, the Notice of Removal is filed on Magedson's behalf.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2017, the foregoing was sent via

electronic and first class mail, postage prepaid, to the following:

Aaron B. Houchens (VSB No. 80489)
Stanley & Houchens, LLC
13508 Booker T. Washington Hwy.
Moneta, VA 24121
ahouchens@shg-law.com

Stephen M. Smith (VSB No. 14362)
Seth D. Scott (VSB No. 80907)
David B. Holt (VSB No. 65564)
The Smith Law Center
2100 Kecoughtan Road
Hampton, VA 23661
sscott@attorneys4injured.com
*Counsel for Plaintiff*

Jesse Binnall
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
jbinnall@harveybinnall.com
*Counsel for Anna Richter, Tracey Richter and Bert Pitman*

Thomas K. Norment, Jr.
Kauffman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188
tknorment@kaufcan.com
*Counsel for Anna Richter and Bert Pitman*

David A. Warrington (VSB No. 72293)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com

*Counsel for Edward Magedson and*

2

*Xcentric Ventures, LLC*